NEAL McDONALD v. MARIE M. BOEING, EXECUTRIX, ETC.

*Logs and logging—Neglect to break jams—Statutory remedy—Contract—Abandonment.*

1. How. Stat. § 2035, which provides for the breaking of jams of logs caused by the failure of log-owners to make adequate provision therefor, and for driving the logs, gives a *new* remedy, and does not apply to cases where the parties interested have by contract fixed their rights and liabilities.

2. A request to charge which assumes that the jury may find that a parol agreement was not made suspending a written contract, when both parties insist that one was made, and the only dispute is as to the place where it was made, and its terms, is objectionable, as is one which only submits to the consideration of the jury the parol agreement claimed by one of the parties.

3. A temporary suspension of work under a contract, for apparently good reasons, and without objection from the party affected thereby, cannot be construed into an abandonment of the contract.

Error to Wayne. (Gartner, J.) Argued April 22, 1890. Decided May 2, 1890.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*George W. Bates,* for appellant, contended:

1. The conditions of a contract can be waived or abandoned by the acts and conduct of the parties, as well as by express agreement, and when once waived the contract is gone forever, and the party is precluded from claiming anything under it; citing *Jacox v. Clark,* Walk. Ch. 249; *Barrie v. Smith,* 47 Mich. 132; and the question of such waiver is one of intent to be determined from the surrounding circumstances as a fact in the case; citing *Ins. Co. v. O'Connor,* 29 Mich. 241; *Chapman v. Colby,* 47 Id. 45; *Dayton v. Monroe,* Id. 193.

2. In support of the claim that plaintiff is entitled to recover for driving that portion of defendant's logs driven after he abandoned the contract, counsel cited *Walker v. Bean,* 34 Minn. 429; *Osborne v. Lumber Co.,* 33 Id. 286; *Beard v. Clarke,* 35 Id. 324.

3. If the contract is abandoned, the recovery must be had under the statute, on the theory of the absence of contract relations between the parties. The owner of the logs becomes liable without regard to his assent to the acts or things for which he must pay. The statute imposes a duty to pay for services which, without it, being purely voluntary, would not be recoverable for in any other way; citing *Woods v. Ayres,* 39 Mich. 345; and it makes the party personally liable for his share of the "costs and expenses" incurred in thus driving the logs; citing How. Stat. § 2035; *Chapman v. Lumber Co.,* 20 Mich. 362; *Kroll v. Nester,* 52 Id. 70; *Butterfield v. Gilchrist,* 53 Id. 22; *Association v. Lumber Co.,* 72 Wis. 464; *Foster v. Cushing,* 35 Me. 60; *Tibbets v. Tibbets,* 46 Id. 365.

*James T. Keena* (*Isaac Marston,* of counsel), for defendant, contended:

1. If the parties were in contract relations with reference to the drive, there can be no recovery under the statute; citing *Walker*

*v. Bean*, 34 Minn. 429; *Beard v. Clarke*, 35 Id. 327; *Ames v. Booming Co.*, 11 Mich. 146; *Woods v. Ayres*, 39 Id. 345.

2. In support of claim that the temporary suspension of driving was no evidence of abandonment, counsel cited *Walker v. Bean*, 34 Minn. 429; *Osborne v. Lumber Co.*, 33 Id. 286; *Beard v. Clarke*, 35 Id. 324.

GRANT, J. Wilhelm Boeing and Roderick McDonald were engaged in lumbering, in the winter of 1879 and 1880, in the vicinity of Mud lake, Roscommon county. The logs were banked and boomed upon the lake. They were to be driven through Backus creek to Houghton lake, on their way to market. Plaintiff put in about 4,000,000 feet, and Boeing about 13,000,000.

Boeing owned Mud lake, and on January 14, 1880, he and McDonald made a written contract by which McDonald was to have 25 acres of the lake for booming purposes, and land sufficient for rollways and roadways; and, if any of his logs became intermingled with Boeing's logs during the drive from the lake, Boeing agreed to drive them for the sum of $1.50 per 1,000. A storm broke the booms of both parties, and the logs became thoroughly intermingled, so that it was necessary to drive them together.

Plaintiff introduced evidence tending to show that Roderick McDonald and Boeing made a verbal agreement at the Bancroft House, in East Saginaw, in the spring before any driving was done, that each should put on his proportionate share of men, and drive together; that, pursuant to such agreement, each provided his proportionate number of men, and they simultaneously went to work upon the drive in May; that the stream was small, and they were able to drive but a few days, for want of water; that the drive ended May 20, when all the men were taken off; that, on July 27 following, both parties returned with their crews to the drive; that it was. then arranged

between them, through their foreman, that Boeing should drive above the State road, and McDonald below it, plaintiff claiming that this was done merely for convenience; that both parties continued on the drive until August 12, when Boeing took his crew off, for want of water above the State road; that McDonald continued to work below the road until August 22, when he also left on account of the low water; that on September 27 both crews again returned to the drive, and worked until October 14, when Boeing again took his men off,— Boeing's men during this time working above the State road, and McDonald's below, that McDonald continued the work upon the drive below the State road until November 13, when he was stopped by the cold weather.

The evidence on the part of the defendant tended to show that Boeing and McDonald made no such parol agreement for the drive as plaintiff claimed, but that they did make an agreement at Roscommon that, as it was impossible to drive the logs separately, Boeing should drive the whole quantity from Mud lake to the State road, and McDonald should drive the same from the State road to Houghton lake, and that Boeing performed this contract in so far as it was possible, working whenever the state of the water permitted, and stopping only because the water was exhausted.

Plaintiff, who is the assignee of Roderick McDonald, brings this suit to recover the proportionate share of the expense of the drive during which Boeing's men did not work, claiming that Boeing's proper share is three-fourths of such expense.

The declaration contains two counts,—one declaring upon the parol agreement above stated, the other declaring upon the statute (How. Stat. § 2035) which provides that, if any person or persons shall put, or cause to be put, in any lake, etc., any logs, etc., for the purpose of

floating the same to the place of manufacture or market, and shall not make adequate provisions, and put on sufficient force, for breaking jams of such logs, etc., or for running or clearing the same from the banks or shores thereof, or for running or driving the same, and shall thereby hinder the removal of any logs from the banks or shores thereof, or shall thereby obstruct the floating or navigation of such lake, etc., then any other owner of logs, etc., upon such lake, etc., may run, drive, and clear them from the banks, and recover the costs and expense therefor.

At the close of the evidence, plaintiff's attorney abandoned the first count of his declaration, and claimed, under the second count, the right to recover under the statute, upon the theory that the written contract was abrogated and abandoned by the parol agreement claimed to have been made at the Bancroft House, and, if no such parol agreement was made, that such written contract was waived and abandoned by the acts of the parties in jointly putting men upon the drive.

It is evident that the written contract was suspended by some other arrangement or agreement between Boeing and McDonald. Under any theory of the case which can be based upon the evidence, a contract relation existed between them at the commencement of the drive. It is evident that each put his men to work pursuant to some agreement. The testimony on the part of each is that he put his men there by an express parol agreement, and that each carried it out as he understood it. Upon this branch of the case, therefore, the only question for the jury to determine was the terms of such agreement. There was no testimony upon which to base an abandonment of the written contract, except that they had substituted a parol contract for it. The rights of the parties in this case depend entirely upon the terms of that parol

agreement. If it was as claimed by the plaintiff, then he would be entitled to recover under a proper declaration, provided the defendant did not perform the agreement. If the agreement was as claimed by defendant, then the plaintiff could not recover under the issue as here made, because—

"1. There is no claim, nor evidence tending to show, that Boeing's crews did not drive the logs down to the State road as fast as McDonald's men could take care of them.

"2. The declaration is not properly framed for such a case."

Both parties claiming that there was a parol agreement by which they agreed to drive the logs, and each claiming to have acted under it, and disagreeing only as to its terms, a contract relation existed between them, and the statute does not apply. The court and jury, under an issue properly framed, must determine what that contract was, and settle the rights of the parties accordingly. If there was an abandonment of any contract by Boeing which would entitle the plaintiff to recover, it was the parol contract, not the written one. There could be found no abandonment of this contract by Boeing until the jury had determined what the contract was. Plaintiff claimed no right to recover for the abandonment of the parol contract which he claims was made, but he requested the court to charge the jury that, if they found that no new agreement was made between the parties, then their rights in reference to running the logs, and their respective liabilities, would be governed by the statutes of this State relative thereto, if they should, further, also find that the agreement of January 14 was no longer in force, either because of the parol agreement made, as it was claimed, at East Saginaw, or by waiver or abandonment. This request assumed that the jury might find that there was no new agreement

made. This would have been error, because both insisted that one was made, the only dispute being as to its terms; and, this being the case, there was no opportunity for the interposition of the statute. The request was objectionable for the further reason that it left to the consideration of the jury only the parol agreement claimed by plaintiff to have been made at East Saginaw, and left out of sight the parol agreement claimed by defendant to have been made at Roscommon. The object of this statute was to give such a remedy as did not exist before, and does not apply to cases where parties have by contract fixed their rights and liabilities.

If plaintiff intended to insist upon the abandonment of the parol contract by Boeing, the proof, we think, fails to show facts sufficient to maintain his claim. The men of both parties worked upon the drive in May, leaving at the same time. Both returned at the same time in July, and worked at the different places mutually agreed upon. Boeing's men left in August, a few days before McDonald's men left, because the water was too low to work. McDonald did not request Boeing to send his men down the river to assist him, and there is no evidence that they were needed. McDonald does not appear to have found any fault with their leaving. McDonald's men left the drive a few days after for the same reason. Their crews returned again at the same time in September, evidently by mutual understanding, and each crew worked at the same place as before. Both crews continued to work until October 14, when Boeing's crew left again for want of water, and because the stream below the road was full of logs. Plaintiff's witness who had charge of McDonald's men testifies that there were at that time logs enough in the stream below the road for them to take care of. It is apparent that Boeing's men worked on each occasion as long as they could upon that part of

the river which, by mutual arrangement, had been allotted to Boeing to drive. Plaintiff does not deny this. McDonald did not at any time request Boeing to assist him upon the part of the river where he was driving, or make any protest against his leaving the work. We find nothing in such a state of facts to indicate that Boeing had abandoned his contract, or that McDonald so understood it. It was only a suspension, without objection from the party affected, and for apparently good reasons. Such temporary suspension of work cannot be construed into an abandonment, nor give operation to the statute. McDonald cannot be held to have been working under the contract when Boeing's men were at work, and under the statute when they were temporarily absent. It is highly probable from the record, as it appears to us, that the jury would have had no difficulty in determining what the parol agreement was. Be that as it may, the rights and liabilities of the parties depend upon the contract, and not upon the statute.

This disposition of the case renders a discussion of the question of damages unnecessary. Judgment is affirmed, with costs.

The other Justices concurred.